# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

In re:

FARWEST PUMP COMPANY,

              Debtor.

Chapter 7

Case No. 4:17-bk-11112-BMW

**RULING AND ORDER REGARDING TRUSTEE'S MOTION TO APPROVE COMPROMISE AND SETTLEMENT WITH JOEL RODRIGUEZ, ET AL. (DKT. 866)**

      Before the Court is the *Trustee's Motion to Approve Compromise and Settlement with Joel Rodriguez, et al.* (the "Settlement Motion") (Dkt. 866) filed by Christopher Linscott, the Chapter 7 Trustee (the "Trustee"), in which the Trustee asks the Court to approve a settlement agreement (the "Settlement") between the Bankruptcy Estate (the "Estate") and certain parties to pre-petition state court litigation. Creditor Beach Fleischman, PC ("Beach Fleischman") objects to the Settlement on the basis that there is an offer by former creditor David Leonard ("Leonard") to purchase certain of the claims that the Trustee is proposing to settle (the "Leonard Offer"). (Dkt. 883). Beach Fleischman argues that, as compared to the Settlement, the Leonard Offer would provide a better return to creditors of the Estate.

      After a series of preliminary hearings, the Court held an evidentiary hearing on the Settlement Motion on May 12, 2022, at which time testimony was provided by the Trustee and Leonard. At the conclusion of the evidentiary hearing, the parties declined an offer to submit post-trial briefs, and the Court took the matter under advisement. The Court now issues its ruling.

## I. Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). The following constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, as incorporated by Federal Rule of Bankruptcy Procedure 7052, and made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014(c).

## II. Factual and Procedural Background

On January 28, 2015, Farwest Pump Company ("Farwest" or the "Debtor"), filed an action against Joel Rodriguez, Lawrence Rodriguez, Mark Skokan, Ann M. Rico-Skokan, Darlene Rodriguez Krueger ("Krueger"), Doug Dunlap, Christina Dunlap (also known as Tina Dunlap), High Desert Irrigation (Doug Dunlap, Christina Dunlap, and High Desert Irrigation are collectively referred to as the "Dunlap Parties"), and Joyce E. Larson (collectively with the above-named parties, the "Settling Parties") in Pima County Superior Court (the "State Court Action").[1] (Dkt. 946 at 3, ¶ 1). The Dunlap Parties asserted counterclaims against Farwest, and Farwest tendered its defense of the Dunlap Parties' counterclaims to Secura Insurance Company ("Secura"), which accepted the defense under a reservation of rights. (Dkt. 946 at 3, ¶ 2). Farwest's principals, Clark and Channa Vaught (the "Vaughts"), are also parties to the State Court Action. The factual disputes underlying the State Court Action relate to actions that took place between 1998 and 2013. (Dkt. 954 at ¶ 3).

On September 20, 2017, Farwest filed a petition for relief under Chapter 11 of the Bankruptcy Code (the "Petition Date"). (Dkt. 1). In its schedules, Farwest valued its claims in the State Court Action at $3 million. (Dkt. 946 at 4, ¶ 7; Dkt. 82). An Official Committee of Unsecured Creditors (the "Committee") was appointed shortly after the Petition Date. (Dkt. 49).

On December 19, 2017, Farwest removed the State Court Action to this Court. (Adv. Dkt. 1).[2]

---

[1] Although additional parties were named in the State Court Action, the Settling Parties are the only remaining litigants against whom the Estate has asserted claims.

[2] "Adv. Dkt." refers to docket entries in the removed action, adversary case number 4:17-ap-00815-BMW.

On April 17, 2018, this Court issued an order remanding the State Court Action to the Pima County Superior Court for liquidation of the claims asserted therein. (Adv. Dkt. 23).

On November 4, 2020 (the "Conversion Date"), this case was converted to Chapter 7, and the Trustee was appointed thereafter. (Dkt. 798).

The Trustee is not aware of any material effort by the Debtor or the Committee to resume litigation of the State Court Action while this case was pending in Chapter 11. (Dkt. 954 at ¶ 4). Since the Conversion Date, the Trustee has likewise not made any material effort to resume litigation of the State Court Action.

Before this case was converted to Chapter 7, the State Court Action was scheduled for an estimated 20-day trial to begin on March 17, 2020. (Dkt. 946 at 5, ¶ 11). However, after conversion of the case, the State Court Action was stayed. (Dkt. 946 at 5, ¶ 13). A new trial date has not been set, and the Trustee believes that in the event litigation were to continue, it is unlikely that a trial would begin until sometime in 2023. (Dkt. 954 at ¶ 10).

As of the Conversion Date, Leonard was a creditor of this Estate. (*See* Dkt. 444). However, on March 26, 2021, the Court approved a settlement between the Estate and Leonard, pursuant to which Leonard's claims against the Estate were deemed fully satisfied in exchange for the Estate's assignment of certain claims against Secura (the "Secura Claims") to Leonard. (Dkt. 842; 5/12/2022 Trial Tr. 16:21-24, 36:25-37:5). As a result, Leonard is no longer a creditor of this Estate, but Leonard holds the interest in the Secura Claims and is pursuing recovery on the same. (Dkt. 842; 5/12/2022 Trial Tr. 16:21-22, 36:25-37:8, 37:20-22).

**A.    Claims of the Estate**

The Estate's remaining claims against the Settling Parties include breach of fiduciary duty, breach of contract and bad faith, constructive fraud, fraud, and negligent misrepresentation claims. (Dkt. 946 at 4, ¶ 5). Included in these remaining claims are aiding and abetting and racketeering claims the Estate has asserted against the Dunlap Parties, which claims have survived summary judgment. (Dkt. 946 at 4, ¶ 5).

Pertinent to any claims of the Estate against Krueger, in June 2017, Krueger filed a

personal Chapter 13 bankruptcy case.[3] Krueger included Farwest on her Schedule E/F as holding a contingent, unliquidated, disputed claim in the amount of $0, but Farwest did not file a proof of claim in that case. (*See* Kr. Dkt. 4 at 4).[4] Farwest did, however, file a non-dischargeability action against Krueger pursuant to 11 U.S.C. §§ 523(a)(2), (a)(4), and (a)(6), which action remains pending (the "Krueger Adversary"). (Dkt. 946 at 4, ¶ 6).

### B. Claims Against the Estate

The Dunlap Parties have filed a proof of claim in this case in the amount of $305,957 on account of and relating to their remaining counterclaims in the State Court Action. (Dkt. 946 at 4, ¶ 8; Proof of Claim 23-1). The parties agree that it is possible some of the claims asserted by the Dunlap Parties against the Debtor in the State Court Action may be covered by Farwest's Secura insurance policy. (Dkt. 946 at 4, ¶ 9). The Dunlaps have indicated that they may assert additional claims against the Estate, including potential administrative expense claims. (Dkt. 946 at 4, ¶ 10). However, the Dunlaps have not liquidated these amounts, amended their proof of claim to include these amounts, or filed an administrative expense claim. (Dkt. 946 at 4, ¶ 10).

Krueger has filed a proof of claim in this case in the amount of $80,000 for attorneys' fees. (Dkt. 946 at 5, ¶ 14; Proof of Claim 27-1). However, in her personal bankruptcy case, Krueger did not schedule any claims against Farwest. (*See* Dkt. 946 at 5, ¶ 15; Kr. Dkt. 4).

Aside from the Dunlap Parties and Krueger, none of the other Settling Parties has filed a claim in this bankruptcy case. (5/12/2022 Trial Tr. 18:15-18). Further, no Settling Party formally asserted an administrative expense claim prior to the Chapter 11 administrative claims bar date. (*See* Dkt. 857; Dkt. 946 at 4, ¶ 10; 5/12/2022 Trial Tr. 18:15-18).

## III. The Competing Proposals

### A. The Trustee's Settlement

Under the Trustee's Settlement, the Estate's claims against the Settling Parties would be released in exchange for complete satisfaction of all claims asserted by the Settling Parties against the Estate, including the $305,957 proof of claim filed by the Dunlap Parties and the $80,000

---

[3] See *In re Krueger*, 4:17-bk-07553-SHG (Bankr. D. Ariz. 2017).
[4] "Kr. Adv. Dkt." refers to the docket in the Krueger bankruptcy case, case number 4:17-bk-07553-SHG (Bankr. D. Ariz. 2017).

proof of claim filed by Krueger, which claims represent approximately 25% of the general unsecured claims filed in this case. (Dkt. 866; 5/12/2022 Trial Tr. 10:1-3).

Neither the Vaughts nor their non-debtor affiliates are parties to the Trustee's Settlement. (Dkt. 946 at 6, ¶ 18; Dkt. 954 at ¶ 17). As such, any claims that any of the Settling Parties, including the Estate, have against the Vaughts or any of their affiliates are fully reserved and unaffected by the Trustee's Settlement. (Dkt. 946 at 6, ¶ 18; Dkt. 954 at ¶ 17). Nevertheless, the Settlement would resolve all claims of and against the Estate in the State Court Action.[5]

### B. The Leonard Offer

Under the Leonard Offer: (1) Leonard would pay the Estate $25,000 for an assignment of the Estate's claims against the Dunlap Parties and Krueger; and (2) "Leonard, individually and through his entity, would indemnify the Estate for any amounts that the Estate would have to distribute on account of any allowed claims of the Settling Parties" (the "Indemnification"). (Dkt. 946 at 2).[6]

Leonard has clarified that the Indemnification would cover: (1) the pro-rata portion of any and all of the pre-conversion claims of the Dunlap Parties and Krueger against the Estate; and (2) any post-conversion claims that the Dunlap Parties and Krueger could have against the Estate, provided that such claims could not have been filed before the Chapter 11 administrative claims bar date. (Dkt. 953 at ¶¶ 3-4). The Indemnification would not, however, cover "administrative expenses incurred [by] the Trustee related to the Bankruptcy case." (Dkt. 953 at ¶ 5).

Further, when the Trustee is in a position to make a distribution to unsecured creditors, Leonard proposes to post a bond in the amount that the Krueger and the Dunlap Parties would receive from the Estate as part of that distribution, based upon their filed proofs of claim. (Dkt. 946 at 7, ¶ 26; 5/12/2022 Trial Tr. 41:22-24).

---

[5] There are no claims of the Estate pending against the Vaughts in the State Court Action. (Dkt. 953 at ¶ 10).

[6] Counsel for Beach Fleischman and Leonard suggested during the evidentiary hearing that there were higher and better offers proposed to the Trustee during negotiations, over and above the Leonard Offer that has been presented to the Court. (*See* 5/12/2022 Trial Tr. 31:12-32:19). Any such offers are not before the Court and will not be considered in this ruling.

## IV. Issue

The issue before the Court is whether the Trustee has properly exercised his business judgment in proceeding with the Settlement, rather than the Leonard Offer.[7]

## V. The Positions and Arguments of the Parties

### A. Trustee's Position

The Trustee asserts that for a number of reasons, his proposed Settlement provides a resolution of the issues that is preferable to the Leonard Offer. The Trustee states that he reached the Settlement and filed the Settlement Motion following an investigation of the merits of the Estate's claims in the State Court Action, an investigation of the proofs of claim filed by the Dunlap Parties and Krueger, and discussions about the pending litigation with the Estate's material stakeholders. (Dkt. 946 at 5, ¶ 17; *see also* 5/12/2022 Trial Tr. 9:20-11:16). Specifically, the Trustee did the following in connection with his negotiation of the Settlement:

    a. Analyzed publicly available documents pertaining to the State Court Action;

    b. Analyzed publicly available documents filed in the Krueger Adversary;

    c. Analyzed an expert report dated August 24, 2017 that was prepared to aid the Debtor in analyzing the counterclaims made by the Dunlap Parties and others;

    d. Analyzed the Debtor's books, records, and schedules;

    e. Analyzed the claims register and the proofs of claim filed by the Dunlap Parties and Krueger;

    f. Held meetings and interviews with multiple stakeholders in this bankruptcy case, including: (i) Leonard; (ii) representatives of and/or counsel for The Morgan Rose Ranch, L.P., BMR III, L.P., and ANC Orchard, LLC (collectively, the "Morgan Ranch Creditors"), which hold some of the largest general unsecured claims in this case; (iii) former counsel to the Committee; (iv) the Vaughts; and (v) counsel for the Dunlap Parties;

    g. Analyzed the Leonard Offer; and

---

[7] The parties have phrased the issue as whether the Trustee's choice to proceed with the Settlement as opposed to the Leonard Offer satisfies the business judgment standard. (Dkt. 946 at 9).

    h. Held discussions with representative(s) of Secura regarding Farwest's defense of the counterclaims asserted by the Dunlap Parties in the State Court Action.

(Dkt. 954 at ¶ 2; 5/12/2022 Trial Tr. 9:20-11:16).

  In terms of the value of the litigation, although the Debtor ascribed a $3 million value to the Estate's claims in the State Court Action, the Trustee has found the Debtor's schedules to be unreliable. (Dkt. 954 at ¶ 11). Based upon his analysis, the Trustee believes it would take substantial time and cost to resume the State Court Action and litigate objections to the claims asserted by the Dunlap Parties and Krueger in this bankruptcy case. (Dkt. 954 at ¶ 5). Further, the Trustee asserts that the Estate's limited resources complicate the Estate's ability to pursue litigation. (Dkt. 954 at ¶ 7).

  It is the Trustee's position that the proposed satisfaction of the Krueger and Dunlap Parties' claims under the terms of the Settlement would materially benefit the Estate by reducing the pool of general unsecured claims by approximately 25%, and thereby increase recoveries for the holders of the remaining allowed claims. (Dkt. 954 at ¶ 6; 5/12/2022 Trial Tr. 17:8-14).

  In comparing the Settlement against the Leonard Offer, the Trustee asserts that general unsecured creditors would receive an estimated 39% return on their claims if the Settlement is approved. (Dkt. 954 at ¶ 8; TE 11;[8] 5/12/2022 Trial Tr. 13:18-14:21). By contrast, the Trustee asserts that general unsecured creditors would receive an estimated 36% return in the event the Settlement is not approved, and the Leonard Offer is pursued. (Dkt. 954 at ¶ 9; TE 12;[9] 5/12/2022 Trial Tr.14:22-16:7). The Trustee attributes this lower estimated return to creditors under the Leonard Offer primarily to costs the Estate would incur while waiting for Leonard to conclude the claims litigation in the State Court Action. (Dkt. 954 at ¶¶ 9, 13-14). Specifically, the Trustee assumes: (1) an additional $15,000 in legal fees to monitor and coordinate the litigation with the Dunlap Parties; (2) an additional $2,500 in operating expenses to keep this bankruptcy case open; and (3) an additional $1,000 in trustee fees given the funds that the Estate would acquire under

---

[8] TE 11 is also Exhibit A to the *Declaration of Christopher Linscott in Support of Trustee's Motion to Approve Compromise and Settlement Agreement with Joel Rodriguez, et al.* (Dkt. 954).

[9] TE 12 is also Exhibit B to the *Declaration of Christopher Linscott in Support of Trustee's Motion to Approve Compromise and Settlement Agreement with Joel Rodriguez, et al.* (Dkt. 954).

the Leonard Offer. (5/12/2022 Trial Tr. 15:4-19, 22:13-23:1; TE 12).

The Trustee does not believe Leonard's offer to indemnify the Estate and post a bond would benefit the Estate given the Trustee's understanding that he would not be able to close this case until such time as the Krueger and Dunlap Parties' claims are fully and finally resolved. (Dkt. 954 at ¶ 14; 5/12/2022 Trial Tr. 17:5-7, 26:5-6).

Further, according to the Trustee, counsel for the Dunlap Parties has asserted that continued litigation of the State Court Action, even by Leonard, could give rise to administrative claims against the Estate for, among other things, vexatious litigation. (Dkt. 954 at ¶ 9). It is the Trustee's understanding, and it has not been refuted, that the Estate, and not Leonard, would be responsible for any such administrative claims. (*See* Dkt. 954 at ¶ 9).

Ultimately, the Trustee decided to move forward with the Settlement due to the complicated and protracted nature of the State Court Action, the Trustee's assessment of the Estate's claims against the Settling Parties, the immediate benefit to the Estate resulting from the satisfaction of the Krueger and the Dunlap Parties' claims, the complexities and uncertainties surrounding the Leonard Offer, and in light of support from key stakeholders. (Dkt. 946 at 8, ¶ 29).

The Trustee asserts that given the foregoing, based upon his business judgment, the terms of the Settlement reflect a fair and equitable compromise of the State Court Action, Krueger Adversary, and Krueger and Dunlap Parties' claims that is better for creditors and the Estate than the Leonard Offer. (Dkt. 954 at ¶ 21).

### B. Beach Fleischman's Position

Beach Fleischman argues that the Leonard Offer represents a higher and better offer than the Trustee's Settlement given that it provides for $25,000 in immediate cash to the Estate and contains an indemnification provision. In Beach Fleischman's view, the Leonard Offer would provide for the same end result as the Settlement, plus an additional $25,000 in cash. (*See* Dkt. 953 at ¶¶ 1, 2 & 6; 5/12/2022 Trial Tr. 28:9-18). Beach Fleischman, through Leonard, further suggests that the counterclaims raised by the Dunlap Parties against Farwest in the State Court Action are without merit. (5/12/2022 Trial Tr. 30:18-31:3). For these reasons, Beach Fleischman

contends that the Trustee's decision to move forward with the Settlement Motion constitutes an abuse of the Trustee's business judgment.

Beach Fleischman, through Leonard, takes the position that any protracted litigation resulting from the Leonard Offer would not impact the administration of the Estate, because it is Leonard's understanding that if his offer is approved, the Trustee may close the Estate at any time, at which point Leonard would post a bond to cover any distribution to which the Dunlap Parties and/or Krueger would be entitled. (Dkt. 953 at ¶ 8). Leonard has also opined that, despite the fact that the Indemnification does not cover administrative expenses incurred by the Trustee, there would be no administrative costs to the Estate related to his proposed assignment of the claims. (Dkt. 953 at ¶ 12).

### C. The Positions of Other Creditors

The Trustee has represented to the Court that the Morgan Ranch Creditors, which hold three of the largest general unsecured claims in this case comprising approximately 81% of the general unsecured class, support the Settlement over the Leonard Offer. (Dkt. 954 at ¶ 12; 5/12/2022 Trial Tr. 10:7-20).

Other than Beach Fleischman, no other party in interest objected to the Settlement Motion.

## VI. Legal Analysis and Conclusions of Law

Federal Rule of Bankruptcy Procedure 9019 authorizes a bankruptcy court to approve a compromise or settlement in a pending bankruptcy case.

The Ninth Circuit has determined that "there must be more than a mere good faith negotiation of a settlement by the trustee in order for the bankruptcy court to affirm a compromise agreement." *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986). "The court must also find that the compromise is fair and equitable." *Id.* "The trustee, as the party proposing the compromise, has the burden of persuading the bankruptcy court that the compromise is fair and equitable and should be approved." *Id.*

In determining the fairness, reasonableness and adequacy of a proposed settlement, the bankruptcy court must consider:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Id.* (citations omitted).

"No one factor is dispositive" and "the factors should be considered as a whole to determine whether the settlement compares favorably with the expected rewards of litigation." *Skyline Ridge, LLC v. Cinco Soldados, LLC (In re Skyline Ridge, LLC)*, BAP Nos. AZ-20-1264-BTL & AZ-21-1000-BTL, 2021 WL 3829311, at *9 (9th Cir. BAP Aug. 25, 2021) (quoting in part *Greif & Co. v. Shapiro (In re W. Funding Inc.)*, 550 B.R. 841, 851 (9th Cir. BAP 2016), *aff'd,* 705 F. App'x 600 (9th Cir. 2017)); *accord Open Med. Inst., Inc. v. Hjelmeset (In re Open Med. Inst., Inc.)*, No. BAP NC-21-1233-FBS, 2022 WL 1711774, at *7 (9th Cir. BAP May 26, 2022). Because a court has discretion as to how much weight to give each of the *A & C Properties* factors, "any one factor may have weight in isolation that justifies [a] settlement." *Tieni v. Mastan (In re Bondanelli)*, No. BAP CC-19-1175-TaFS, 2020 WL 1304140, at *2 (9th Cir. BAP Mar. 18, 2020); *see also In re Open Med. Inst., Inc.,* 2022 WL 1711774, at *11 ("a settlement can satisfy the *A & C Properties* test even if the evidence supporting one or more of the four factors is relatively weak"). Further, when assessing a settlement, the Court need not decide issues of disputed fact or questions of law raised in the controversies sought to be settled. *Burton v. Ulrich (In re Schmitt)*, 215 B.R. 417, 423 (9th Cir. BAP 1997).

"Ordinarily, the position of the trustee is afforded deference, particularly where business judgment is entailed in the analysis . . . ." *Simantob v. Claims Prosecutor, LLC (In re Lahijani)*, 325 B.R. 282, 289 (9th Cir. BAP 2005). "Nevertheless, particularly in the face of opposition by creditors, the requirement of court approval means that the responsibility ultimately is the court's." *Id.* That being said, although creditor objections must be afforded due deference, such objections are not controlling. *In re A & C Props.*, 784 F.2d at 1382. "Unsecured creditors have a voice but not a veto." *Sterling v. Green (In re Esterlina Vineyards & Winery, LLC)*, BAP No. NC-16-1428-TaBS, 2018 WL 1354331, at *8 (9th Cir. BAP Mar. 13, 2018).

Ultimately, a bankruptcy court has great latitude in approving a compromise which it determines to be fair and equitable. *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988). The following sets forth the Court's application of the *A & C Properties* factors to the Settlement.

### A. Probability of Success in Litigation

The State Court Action, which involves numerous parties and claims flowing both from and against the Estate, has been pending for more than seven years, involves numerous, complex claims, and relates to actions and conduct which occurred more than a decade ago. Further, claims on both sides of the lawsuit have survived dispositive motions. The parties do not dispute that were litigation to continue, a trial would be necessary. Based upon the foregoing, the Estate's probability of success in the State Court Action is anything but certain. Likewise, given the nature and overlap between the State Court Action and the status of the Krueger and Dunlap Parties' claims in this bankruptcy case, the Estate's probability of success in any bankruptcy court litigation against Krueger and/or the Dunlap Parties remains speculative.

Beach Fleischman, through Leonard, has suggested that the counterclaims asserted by the Dunlap Parties against Farwest have little to no merit, but Beach Fleischman has not argued that the Debtor's probability of success in the State Court Action and/or pertinent bankruptcy litigation is so certain as to weigh against settlement.

Given the totality of the circumstances and record before the Court, it is this Court's determination that the first *A & C Properties* factor weighs strongly in favor of approval of the Settlement.

### B. Difficulties of Collection

No testimony or evidence was submitted regarding any potential collection difficulties the Trustee might encounter in the event litigation against the Settling Parties were to continue and the Estate were to prevail, but given the number of parties involved, issues regarding collection could very well arise. Further, as discussed above, the record reflects that at least one of the Settling Parties against whom the Estate has a claim was a debtor in a Chapter 13 bankruptcy case commenced after the State Court Action.

Beach Fleischman has not argued that this *A & C Properties* factor weighs to any extent against settlement.

Based upon the foregoing, the Court finds that the second *A & C Properties* factor weighs in favor of approval of the Settlement, or is at least neutral.

### C. Complexities, Expense, Inconvenience, and Delay of Litigation

The claims at issue in the State Court Action and the claims involving the Settling Parties in this bankruptcy case and in the Krueger Adversary are numerous, complex, and fact-intensive. Additionally, the expense to the Estate of continuing litigation against the Settling Parties could ultimately be prohibitive given that the Debtor's defense costs in the State Court Action have been borne by Secura under a reservation of rights, and given that the Estate is responsible for all administrative expenses incurred in the context of this bankruptcy case and the Krueger Adversary. Further, as noted above, the State Court Action has been pending since 2015, there are no trial dates set, and there is a high likelihood of future appeals and proceedings given the nature of the litigation, and the past history between the parties. Moreover, the Krueger Adversary and the litigation pertaining to the Krueger and Dunlap Parties' claims in this bankruptcy case are in the initial stages.

Beach Fleischman has not argued that the litigation that would be resolved under the terms of the Settlement is not complex or fact-intensive. Beach Fleischman, through Leonard, and as reflected in the Leonard Offer, has acknowledged, that if the litigation at issue were to continue, it would be complex, expensive, and protracted. The Trustee, on the other hand, testified that he may be able to close this case before the end of the year if the Settlement is approved.[10]

Based upon the foregoing, it is the determination of the Court that the third *A & C Properties* factor weighs heavily in favor of approval of the Settlement.

### D. Interest of Creditors

Beach Fleischman, which holds a claim representing approximately 3 to 4% of the general unsecured claims in this case,[11] and which has not been an active participant in these proceedings

---

[10] (5/12/2022 Trial Tr. 23:16-24:2).
[11] (5/12/2022 Trial Tr. 16:12-14; *see also* Proof of Claim 15-1).

other than to allow Leonard a platform to pursue the Leonard Offer, is the only creditor that has objected to the Settlement Motion or supported the Leonard Offer.[12]

The record reflects that the largest general unsecured creditors in this case, which hold more than 80% of the general unsecured claims in this case, and which creditors are not parties to the State Court Action or any other pertinent litigation, prefer the Trustee's Settlement to the Leonard Offer. The Court must give proper deference to these creditors' reasonable views.

Significant creditor support aside, Beach Fleischman suggests that the Trustee's analysis, which shows that general unsecured creditors would receive more in the event the Settlement is approved than they would under the Leonard Offer, is flawed because it does not account for the Indemnification. Under Beach Fleischman's analysis, the Leonard Offer would provide a net benefit to the Estate in the amount of $6,500, after deduction of the administrative and operating expenses estimated by the Trustee, and as such, is in the best interest of creditors.

However, even assuming that Leonard would fully indemnify the Estate for any amounts the Estate would otherwise be obligated to pay the Dunlap Parties or Krueger, and assuming there would be no expenses stemming from the Leonard Offer over and above those estimated by the Trustee, the monetary benefit to general unsecured creditors would be negligible, and would result in, at most, an additional 0.5% distribution on account of allowed general unsecured claims in this case. For Beach Fleischman, this would mean an increased return of less than $300.[13]

Moreover, although Beach Fleischman would have the Court engage in a strict dollar-for-dollar analysis, the risks, delays, and uncertainties associated with the Leonard Offer must be considered and accounted for, and the Trustee has reasonably accounted for those risks, delays, and uncertainties. (5/12/2022 Trial Tr. 20:7-18, 21:8-11). The Court finds the Trustee's analysis credible and reasonable.

With respect to performance under the Leonard Offer, Leonard has submitted a financial statement attesting to the assets of Leonard and his wife, which he believes would be available

---

[12] The Court notes that a representative of Beach Fleischman did not appear at any of the hearings dealing with the objection to the Settlement or the evidentiary hearing.

[13] Even assuming, for the sake of argument, that there would be no ongoing expenses or costs to the Estate associated with the Leonard Offer, the monetary benefit to Beach Fleischman would be, at most, $1,000. (*See* 5/12/2022 Trial Tr. 24:6-12).

1  to satisfy his requirements under the Indemnification.[14] (TE 7; 5/12/2022 Trial Tr. 32:21-33:16).
2  That being said, Leonard acknowledged during testimony that he has not investigated the
3  procedure for obtaining the required bond. (5/12/2022 Trial Tr. 37:9-19; *see also* 5/12/2022 Trial.
4  Tr. 40:10-41:24). Thus, even assuming Leonard has the financial ability to satisfy the
5  Indemnification, issues may arise pertaining to the implementation of the bonding requirement,
6  which could result in additional delays and/or administrative expenses.

7  The Trustee has further testified that the bonding procedure proposed by Leonard would
8  in actuality provide no benefit to the Estate given that the Trustee would not be able to make final
9  distributions or close the case prior to resolution of the Krueger and Dunlap Parties' claims,
10 including appeals. Leonard offered no testimony to refute the Trustee's position on this issue.
11 (*See* 5/12/2022 Trial Tr. 25:15-26:14, 36:19-24).

12 Additionally, as compared against the Leonard Offer, the Settlement provides for a
13 complete and final resolution of litigation across multiple forums. As such, the Settlement would
14 eliminate ongoing administrative expenses stemming from all such litigation and reduce the
15 Estate's exposure to additional costs and claims. Although the Leonard Offer purports to resolve
16 the same litigation through a purchase of claims, the Leonard Offer nevertheless leaves open the
17 possibility for additional litigation and costs that could significantly impact the Estate. The
18 Indemnification, for example, would not cover the Trustee's ongoing operating expenses or legal
19 fees, or cover all possible claims that may be asserted by the Dunlap Parties and/or Krueger in
20 this bankruptcy case.

21 Given the negligible difference in the return to Beach Fleischman under the Leonard
22 Offer, the Court questions Beach Fleischman's motivation in pursuing the objection, and hopes
23 that such objection was not raised solely for the purpose of assisting Leonard in the pursuit of his
24 pending claims against Secura.

25 Ultimately, the record reflects that creditors of this Estate overwhelmingly support the
26 Settlement Motion and would receive no discernable benefit from proceeding under the Leonard

---

[14] The Court notes that under Arizona law, Leonard cannot singlehandedly bind his marital community. A.R.S. §§ 25-214(C)(2). No evidence was presented to show that his spouse agreed to the Indemnification.

Offer. Further, as set forth above, the evidence supports that the Settlement represents a higher and better return for creditors than the Leonard Offer. Given the foregoing, the Court finds that the final *A & C Properties* factor weighs heavily in favor of approval of the Settlement.

## VII. Conclusion

The *A & C Properties* factors weigh in favor of approval of the Settlement, and it is the determination of this Court that the Trustee has met his burden of establishing that the Settlement is fair, equitable, in the best interest of creditors and the Estate, represents the highest and best offer for administering the Estate assets at issue, and should be approved. Based upon the foregoing, the Trustee's pursuit of the Settlement represents a proper exercise of his business judgment, and the record reflects that it was entirely within the Trustee's exercise of his business judgment to reject the Leonard Offer.

Wherefore, based upon the foregoing, upon consideration of the totality of the circumstances and the record in this case, and for good cause shown;

**IT IS HEREBY ORDERED** overruling the Leonard Objection.

**IT IS FURTHER ORDERED** granting the Settlement Motion and approving the Settlement in its entirety.

**IT IS FURTHER ORDERED** authorizing the Trustee to execute any documents and take such actions as are necessary to implement the Settlement.

**IT IS FURTHER ORDERED** that this Court retains jurisdiction to adjudicate any disputes regarding and/or enforce the terms of this Ruling and Order and the Settlement.

**DATED AND SIGNED ABOVE.**